IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RADLEY SONI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-02925-M |
| | § | |
| SOLERA HOLDINGS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

Before the Court is Defendant's Motion to Dismiss and Compel Arbitration (ECF No. 8). For the reasons stated below, the Motion is GRANTED.

**I.  Background**

This is an employment discrimination case.  On September 22, 2020, Plaintiff filed his Complaint, alleging that he was wrongfully discharged from his position with Defendant and asserting claims under the Age Discrimination in Employment Act of 1967, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Texas Labor Code.

On December 14, 2020, Defendant filed its Motion to Dismiss and Compel Arbitration (ECF No. 8).  Defendant argues that Plaintiff signed an arbitration agreement as part of his employment, which covers his claims brought in this suit.  Defendant submits a declaration from its Human Resources Specialist, Jennifer Hill, which states the following:

- Since at least June 2016, it is Defendant's practice to require every new applicant for employment to sign an arbitration agreement as part of the onboarding process. (ECF No. 10-1 at App. 001 ¶ 4).

- To successfully complete the onboarding process, an applicant must accept and sign a number of documents, including the arbitration agreement, in the "ICIMS portal." (*Id.* at App. 002 ¶ 5).

1

- To access the ICIMS portal, an applicant must enter a unique user ID and password, which the applicant creates during the application process.  (*Id.* ¶ 6).

- On August 8, 2017, Plaintiff created a password to access the ICIMS portal and submit his employment application to Defendant.  (*Id.* ¶ 7).

- On February 22, 2018, Defendant offered Plaintiff a job as a sales manager.  (*Id.* ¶ 8).

- On February 23, 2018, Defendant emailed Plaintiff instructions to complete various tasks in the ICIMS portal, including directions to review and execute an arbitration agreement.  (*Id.* ¶¶ 9–10).

- Defendant's records indicate that Plaintiff electronically signed the arbitration agreement on March 1, 2018, at 1:00 p.m.  (*Id.* ¶ 11).

The signed arbitration agreement and an "ICIMS completed task list" are attached to the Hill Declaration.  The arbitration agreement states in pertinent part:

> Except as provided below, Employee and the undersigned employer which is a wholly owned subsidiary of Solera Holdings, Inc. (the "Company") agree all disputes and claims between them shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator.  The only disputes excluded from this Agreement are claims by Employee for workers' compensation or unemployment benefits; claims by Employee for benefits under a Company plan or program that provides its own process for dispute resolution; claims for injunctive relief in aid of the protection of confidential and proprietary information; claims for which this Agreement would be invalid as a matter of law; and actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement, such actions to be governed by the Federal Arbitration Act.  By agreeing to submit the described claims to binding arbitration, Employee does not waive the right to file an administrative complaint with the appropriate administrative agency (e.g., the Equal Employment Opportunity Commission, the National Labor Relations Board, or similar agency) but does knowingly and voluntarily waive the right to file, or participate or obtain relief in, a court action of any nature seeking recovery of money damages or injunctive relief against the Company, except as described above.

(ECF No. 10-1 at App. 005).  The arbitration agreement has a checkbox for Plaintiff's signature, which is checked, and beneath it reads "Radley Soni 3/1/2018 1:00 PM."  (*Id.* at App. 007).  There is also a checkbox for the "Company Signature," which is not checked.  (*Id.*).  Below each checkbox it states: "[c]hecking the checkbox above is the equivalent to a handwritten signature."

(*Id.*).  The ICIMS task list shows that Plaintiff completed the arbitration agreement on March 1, 2018, at 1:00 p.m.  (*Id.* at App. 009).

Plaintiff does not dispute that his claims fall within the scope of the alleged arbitration agreement.  However, Plaintiff asserts that Defendant has failed to establish that a valid arbitration agreement exists.  Plaintiff denies receiving or signing any arbitration agreement and contends that, even if he did sign the arbitration agreement, it is not valid because Defendant did not sign the agreement.  Additionally, Plaintiff objects to the Hill Declaration because it contains hearsay and does not fall within the business records exception.

In a declaration, Plaintiff avers that, on February 26, 2018, he received an email with an employment offer letter dated February 22, 2018 attached.  (ECF No. 12-2 at App. 001 ¶ 2). Plaintiff states that the offer letter provided a link for the arbitration agreement at "Exhibit C," but when he "logged on" there was no arbitration agreement to review.  (*Id.*).  Plaintiff maintains that he "do[es] not recall signing any such agreement," and that he "believe[s] [he] would have saved a copy if [he] had signed such an agreement."  (*Id.* ¶¶ 2, 4, 6).  Plaintiff states that, on February 27, 2018, he signed the offer letter by checking the box and then downloaded a copy of the signed letter.  (*Id.* ¶ 3).  Plaintiff states that he did not communicate with Hill.  (*Id.* ¶ 7). Plaintiff maintains that he called Erika Benjamin in HR to ask about the missing attachment, but he does not recall ever receiving it.  (*Id.* ¶ 5).  Plaintiff states that he "searched [his] e-mail, and did not find the missing attachment or any e-mail containing a link to it."  (*Id.*).

In addition to his declaration, Plaintiff submits: (1) a copy of the February 22, 2018 offer letter with the signature box unchecked (ECF No. 12-2 at App. 004–008); (2) the February 26, 2018 email from Defendant to Plaintiff with the offer letter attached (*Id.* at App. 009); (3) a copy of the February 22, 2018 offer letter with the signature box checked, indicating that Plaintiff

3

electronically signed the offer letter on February 27, 2018 at 11:11 AM (*Id.* at App. 010–013); and (4) emails between Defendant and Plaintiff on March 1, 2018, in which Plaintiff states, at 3:44 p.m., that he "completed all tasks through the web portal" and that he "just need[ed] to go take the drug test tomorrow." (*Id.* at App 014–015).

## II.     Legal Standard

Courts perform a two-part inquiry to determine whether parties should be compelled to arbitrate a dispute. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, the court must determine whether the parties agreed to arbitrate the dispute in question. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Once the court finds that the parties agreed to arbitrate, it must consider whether legal constraints external to the agreement have foreclosed arbitration. *Id.*

The first part of the inquiry involves two considerations: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). "In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts."[1] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

## III.    Analysis

### A.     Plaintiff's Evidentiary Objection

Plaintiff challenges the admissibility of the Hill Declaration and its attachments. Because Plaintiff's evidentiary objection might affect whether the Court may rely on those

---

[1] As both parties rely on Texas law in their briefing, the Court will apply Texas law. *See Zamora v. Swift Transp. Corp.*, 547 F. Supp. 2d 699, 702 (W.D. Tex. 2008), *aff'd*, 319 F. App'x 333 (5th Cir. 2009).

4

documents as evidence, the Court first addresses Plaintiff's objection before considering whether Defendant has established that a valid arbitration agreement exists.

Plaintiff argues that Hill has "no knowledge of the specific transaction on which to base her testimony," and that "[t]he records do not satisfy the business records rule because 'the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.'" (ECF No. 12 at 3) (citing Fed. R. Evid. 803(6)(E)).  Specifically, Plaintiff asserts: (1) the date of Defendant's February 26, 2018 email with the offer letter attached conflicts with Hill's statement that, "[o]n or about February 23, 2018, [Defendant] emailed to Plaintiff instructions to complete various tasks in the ICIMS portal before the commencement of Plaintiff's employment;" and (2) Plaintiff states in his declaration that (a) the link in the offer letter did not contain the arbitration agreement, (b) he requested, but did not receive, a copy of the agreement, and (c) he "had no dealings with Hill." (ECF No. 12 at 2–3).

"Hearsay" is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).  Hearsay is not admissible unless an exception to the hearsay rule applies.  *See* Fed. R. Evid. 802.  An exception to the hearsay rule exists for "records of a regularly conducted activity"—commonly referred to as the "business records exception"—if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

5

> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

This exception requires that either the custodian of the business records or "other qualified witness" lay a foundation before the records are admitted. *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008). The Fifth Circuit has determined that "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *Id*. (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)). Rather, "[a] qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id*. (internal citation omitted). Whether evidence is admissible under Rule 803(6) is "chiefly a matter of trustworthiness." *United States v. Wells*, 262 F.3d 455, 460 (5th Cir. 2001) (internal citation and quotations omitted).

To determine if evidence in support of a motion to compel arbitration is admissible, courts apply the same standard as that applied to a motion for summary judgment. *Domain Vault LLC v. Rightside Group Ltd.*, Case No. 3:17–CV–0789–B, 2018 WL 638013, at *3 (N.D. Tex. Jan. 30, 2018) (citing *Galitski v. Samsung Telecomm Am., LLC*, Case No. 3:12–cv–4782–D, 2013 WL 6330645, at *1 n. 5 (N.D. Tex. Dec. 5, 2013)). In the summary judgment context, evidence is not required to be in a format that would be admissible at trial, but the party offering the summary judgment evidence must be able to prove the underlying facts at trial with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986); Fed. R. Civ. P. 56(c)(2) (explaining a party may object when "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

The Court finds that the Hill Declaration and attachments should be considered in determining whether there is a valid arbitration agreement. Hill states that she has been working at Defendant since June 2016 and has personal knowledge of Defendant's hiring and onboarding process and of the facts stated in the declaration. The Hill Declaration is sufficient to show that Hill could competently testify at trial. Further, the arbitration agreement and ICIMS notes would be admissible at trial, given that Defendant could reasonably present testimony authenticating and verifying the accuracy of those documents. Plaintiff's objection to the Hill Declaration and its attachments is overruled.

B.     **Whether the Parties Entered into a Valid Arbitration Agreement**

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (internal quotations omitted).

Plaintiff argues that he did not sign the arbitration agreement. He asserts that, because the arbitration agreement was not provided to him in writing and was not made available for him to download when he accessed the ICIMS link, Defendant did not comply with Texas Business and Commerce Code § 322.008(a), which provides that:

> If parties have agreed to conduct a transaction by electronic means and a law requires a person to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered, as requires the case may be, in an electronic record capable of retention by the recipient at the time of receipt. An electronic record is not capable of retention by the recipient if the sender or its information processing system inhibits the ability of the recipient to print or store the electronic record.

7

Tex. Bus. & Com. Code. § 322.008(a). As evidence, Plaintiff submits his declaration, in which he states that he did not receive the arbitration agreement, he "do[es] not recall signing any such agreement," and he "believes [he] would have saved a copy if [he] had signed such an agreement." (ECF No. 12-2 ¶¶ 2, 4, 6). Plaintiff also states in his declaration that he called Benjamin in HR "to ask about the missing attachment[ ] [to the offer letter], but [does not] recall ever receiving [the attachment]," and "searched [his] email, and did not find the missing attachment or any e-mail containing a link to it." (*Id.* ¶ 5).

Defendant responds that the evidence shows that Plaintiff signed the arbitration agreement. Defendant points to the copy of the arbitration agreement, which indicates that Plaintiff checked the "Signature" box on March 1, 2018 at 1:00 PM (ECF No. 10-1 at App. 007), and Plaintiff's email to Defendant on March 1, 2018, at 3:44 PM, which states that he had "completed all tasks through the web portal." (ECF No. 12-3 at App. 014).

After weighing the evidence, the Court finds that Plaintiff received and signed the arbitration agreement. Defendant's evidence shows that in order to start work with Defendant, Plaintiff accessed the ICIMS portal and completed the onboarding paperwork, including signing the arbitration agreement. Plaintiff's evidence does not convince the Court that Defendant's records of Plaintiff signing the arbitration agreement are not accurate. In other words, Plaintiff's declaration and emails do not create a fact issue as to whether Plaintiff received and signed the arbitration agreement. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant") (internal citation omitted).

Plaintiff also argues that, even if he did sign the arbitration agreement, it is not valid, because Defendant did not sign it.

Under Texas law, whether a written contract must be signed to be binding is a question of the parties' intent. *See Scaife v. Associated Air Ctr. Inc*., 100 F.3d 406, 410 (5th Cir. 1996). "Parties to an arbitration agreement may express their intent to require a signature as a condition precedent to the agreement's enforceability." *Wright v. Hernandez*, 469 S.W.3d 744, 758 (Tex. App.—El Paso 2015, no pet.). Texas courts have held that a signature block by itself is insufficient to establish the parties' intent to require signatures. *Huckaba,* 892 F.3d at 689–90 (internal citations omitted). Similarly, although the FAA requires an arbitration agreement to be written, it does not expressly require the agreement to be signed by the parties. *See* 9 U.S.C. § 3; *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 63–64 (5th Cir. 1987).

"When there is no evidence to show that the parties intended the signing of the agreement to be a condition precedent, the evidence must still demonstrate that the non-signatory party intended to be bound by the agreement." *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 717 (Tex. App.—Houston, 1st Dist. 2020, no pet.) (citing *Wright*, 469 S.W.3d at 760)). In determining whether the parties intended to be bound by the agreement, courts have considered various actions taken by the employer. *Wright*, 469 S.W.3d at 761. These include the employer's "act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it." *Id*. (internal citations omitted).

Plaintiff asserts that the parties intended that they would both sign the arbitration agreement. For support, he points to his offer letter, which states, "You and the Company shall

9

execute the arbitration agreement set forth in Exhibit C," and the fact that the arbitration agreement references the "undersigned employer" and has a space for a signature.

The Court disagrees with Plaintiff's position. The Court finds that the plain language of the arbitration agreement does not require a signature as a condition precedent to the agreement's enforceability. Further, Defendant, through its actions of drafting, recording, and enforcing the arbitration agreement, has manifested that it intended to be bound by the agreement. The cases cited by Plaintiff do not persuade the Court otherwise. For example, in *Huckaba*, the Fifth Circuit reversed the district court's decision to compel arbitration "[b]ecause the express language of the agreement at issue requires for it to be signed by both parties and because it is undisputed that [Defendant] did not sign the agreement." 892 F.3d at 687. Specifically, the arbitration agreement provided that the parties' signatures were "affixed hereto," and stated that "[b]y signing this agreement the parties are giving up any right they may have to sue each other" and that the agreement "may not be changed, except in writing and signed by all parties." *Id*. at 688. Further, *In re Bunzl USA, Inc.*, the court affirmed the lower court's decision to refuse to compel arbitration, because the defendant employer did not sign the arbitration agreement and the agreement contained the following provision: "No modification or amendment of any provision of this Agreement is effective unless it is in writing *and signed by the parties to this Agreement*." 155 S.W.3d 202 (Tex. App.—El Paso 2004, no pet.) (emphasis in original).

Here, there is no similar language or provision in the arbitration agreement. Thus, the Court finds that the evidence shows that the parties did not intend the signing of the agreement to be a condition precedent and did intend to be bound by the arbitration agreement.

10

### IV.  Conclusion

In sum, the Court determines that a valid arbitration agreement exists, Plaintiff's claims fall within the scope of the arbitration agreement, and no federal statute or policy renders Plaintiff's claims nonarbitrable.  Because all of Plaintiff's claims in this action are subject to arbitration, dismissal, rather than a stay, is appropriate.  *See Alford v. Dean Witter Reynolds*, *Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (internal citations omitted).

IT IS ORDERED that Defendant's Motion to Compel (ECF No. 8) is GRANTED. Plaintiff's claims against Defendant are DISMISSED without prejudice to their being reasserted in arbitration.

**SO ORDERED.**

March 23, 2021.

BARBARA M. G. LYNN
CHIEF JUDGE